**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

JOHN S. GAY, Plaintiff,
v.
KAYLA SCOTT, RN, and JOHN HRICZ, RN, Defendants.
Case No. 4:25-cv-00053-AW-MAF

# DEFENDANT JOHN HRICZ'S MOTION FOR SUMMARY JUDGMENT, OR PARTIAL SUMMARY JUDGMENT, AND SUPPORTING MEMORANDUM

Defendant John Hricz, representing himself, moves under Federal Rule of Civil Procedure 56 for judgment on the claim against him (Count III of the third amended complaint, ECF No. 24). Alternatively, he requests partial judgment as to the alleged November 13, 2022 encounters. This motion relies on the attached Declaration of John Hricz (Exhibit A).

**Statement of Material Facts**

1. Mr. Hricz declares that neither he nor Nurse Scott had Mr. Gay as a patient on November 13, 2022. He states that he was assigned to Confinement, Nurse Scott was assigned to the Med Room, and another nurse worked in the Annex Emergency department. Exhibit A, paragraph 21.

2. On November 14, Mr. Hricz observed Mr. Gay enter triage with a complaint of facial weakness and drooping. He observed Nurse Scott assess him and recheck an elevated blood-pressure reading. Exhibit A, paragraphs 4-5.

3. Mr. Hricz observed Nurse Scott review the electronic medication record, obtain an EKG with Nurse Butler, report to provider Melanie Huey, and carry out a neurological assessment. Exhibit A, paragraphs 6-9.

4. Mr. Hricz observed a provider order for Clonidine, administration of medication, continued monitoring, a further order and recheck, and provider clearance for Mr. Gay to leave the clinic. Exhibit A, paragraphs 9-13.

5. After a later complaint, Mr. Hricz observed Nurse Scott seek Mr. Gay's return, reassess him, call the on-call provider, and explain further treatment. Mr. Hricz observed Mr. Gay sign a refusal form. Exhibit A, paragraphs 14-19.

6. Mr. Hricz learned of an air transport the next day from CNA Shelby Bright and spoke with the director of nursing. He does not claim to have personally witnessed that transport. Exhibit A, paragraph 20.

**Legal Standard and Argument**

Summary judgment requires showing that there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Declarations must be based on personal knowledge and admissible facts. Fed. R. Civ. P. 56(c)(4).

The Eleventh Circuit requires proof that a defendant was subjectively aware that his own conduct created a substantial risk of serious harm and did not respond reasonably. Wade v. McDade, 106 F.4th 1251, 1261-62 (11th Cir. 2024) (en banc).

The declaration describes substantial care on November 14, not a refusal to examine Mr. Gay. Exhibit A, paragraphs 4-19. It also directly disputes the allegation that Mr. Hricz personally turned Mr. Gay away on November 13. Exhibit A, paragraph 21. Mr. Hricz requests judgment if the admissible record shows no genuine dispute about his individual conduct or the necessary state of mind. If a genuine dispute remains as to November 14, he alternatively requests partial judgment or an order under Rule 56(g) on any facts the Court finds undisputed.

**Requested Relief**

Mr. Hricz asks the Court to enter summary judgment in his favor on Count III, or to grant appropriate partial relief under Rule 56(a) or (g).

Dated: October 6, 2026

Signature: John M Hricz III RN
John Hricz, Defendant pro se
Current mailing address: 3943 Heidi Rd W, Jacksonville FL 32277
Telephone: 904-755-4226

**Certificate of Word Count**

I certify that this motion and supporting memorandum contain 515 words, including headings.

**Certificate of Service**

I certify that on October 6, 2026, I mailed a copy of this motion, memorandum, and Exhibit A by U.S. mail to John S. Gay and Kayla Scott at their current addresses of record.

Signature: John M Hricz III RN
John Hricz

# EXHIBIT A

Declaration of John Hricz

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

JOHN S. GAY, Plaintiff,
v.
KAYLA SCOTT, RN, and JOHN HRICZ, RN, Defendants.
Case No. 4:25-cv-00053-AW-MAF

## DECLARATION OF JOHN HRICZ

I, John Hricz, declare as follows:

1. I am an adult male nurse and the husband of Kayla Scott, who is a nurse. I make this declaration based on my personal knowledge of the events described below, which I personally witnessed. If called to testify, I could and would testify competently to these facts.

2. On November 14, 2022, I observed Nurse Scott assigned as the triage nurse at Columbia Annex. Her clock-in time that morning was 7:23 AM.

3. I observed that correctional officers on duty informed Nurse Scott that the compound was on lockdown and that, as a result, no non-emergent sick-call assessments would take place that day.

4. Shortly after the start of her shift, I observed Nurse Scott being notified that Mr. John Gay had presented to the clinic with a complaint of one-sided facial weakness and drooping. The complaint was treated as an emergent concern requiring immediate evaluation.

5. I observed Mr. Gay walk into the triage office. I observed Nurse Scott conduct a standard clinical assessment, including asking relevant history questions, evaluating his symptoms, and obtaining vital signs. I observed that his blood pressure was elevated. I observed Nurse Scott manually recheck the reading, which remained high.

6. I observed Nurse Scott review Mr. Gay's electronic medical administration record (eMAR). I observed her note that he had not come up for his prescribed blood-pressure medications that morning. I also observed documentation in the eMAR reflecting prior non-compliance and that he had previously received education about the importance of medication adherence.

7. I observed Nurse Scott and another nurse present in the triage room, Chanda Butler, escort Mr. Gay to obtain an EKG. After the EKG was completed, I observed Nurse Scott provide the results to the on-site provider, Melanie Huey, and verbally

update Ms. Huey about Mr. Gay's symptoms and medication non-compliance.

8. I observed Ms. Huey review the EKG and report that it showed no acute abnormalities. I observed Ms. Huey instruct Nurse Scott to perform a neurological assessment to rule out stroke. I observed that Mr. Gay passed that assessment without incident.

9. I observed Nurse Scott report the neurological-assessment findings to Ms. Huey. I observed Ms. Huey give a verbal order for Clonidine 0.1 mg PO and instruct that Mr. Gay's blood pressure be reassessed in one hour.

10. I observed Nurse Scott explain the plan to Mr. Gay, including the likelihood of a headache from rapid blood-pressure reduction, described as a known side effect of Clonidine. I observed Mr. Gay agree to the treatment and take the medication in Nurse Scott's presence. I observed him remain in the clinic waiting area for monitoring.

11. After one hour, I observed Nurse Scott reassess Mr. Gay's blood pressure, which remained elevated. I observed her inform Ms. Huey, who ordered a second dose of Clonidine and a recheck.

12. I observed Nurse Scott explain that plan to Mr. Gay. I observed that he initially refused, stating that he wanted to return to his dorm to lie down. I observed Nurse Scott tell him that this would be considered a refusal of treatment and offer to request a lunch tray if he stayed. I observed Mr. Gay choose to remain in the clinic and proceed with the plan.

13. I observed the second blood-pressure reading show a reduction to a level that Ms. Huey deemed acceptable. I observed Ms. Huey clear Mr. Gay to return to his dorm. I observed Nurse Scott inform Mr. Gay of the provider's decision and again remind him of the importance of medication compliance. I observed Mr. Gay leave the clinic without further incident.

14. Later that day, I observed Director of Nursing (DON) Krystal Roberson inform Nurse Scott that Mr. Gay had told officers and the visiting assistant warden that he had not received medical treatment. In response, I observed Nurse Scott make multiple calls to Papa Dorm requesting that Mr. Gay be brought back for reassessment. I do not recall the exact number of calls. Because of the strict lockdown, movement was delayed, and it took time for Mr. Gay to be brought back.

15. When Mr. Gay returned, I observed Nurse Scott conduct another assessment similar to the earlier encounter, except that no EKG was performed. I observed that the only abnormal finding was an elevated blood-pressure reading.

16. I observed that Ms. Huey had gone home for the day. I observed Nurse Scott contact Ms. Huey by telephone in Ms. Huey's capacity as the designated

after-hours provider. I observed Ms. Huey instruct Nurse Scott to administer another dose of Clonidine and reassess Mr. Gay's blood pressure. I also observed Ms. Huey state that, if his blood pressure remained elevated, he should be sent to an outside hospital for further evaluation.

17. I observed that Nurse Scott did not inform Mr. Gay of the potential for outside transport. I observed her inform him only of the provider's current order: to receive another dose of Clonidine and undergo a blood-pressure recheck. In connection with that communication, I understood that potential inmate movement was not discussed in advance because of institutional security concerns.

18. I observed Mr. Gay express dissatisfaction with the recommendation and hesitate to proceed. I observed Nurse Scott reiterate that the medication was ordered and that, if it did not achieve the desired result, further steps would be taken. I observed that Mr. Gay remained resistant.

19. I observed Nurse Scott explain Mr. Gay's right to refuse treatment and document the interaction. I observed Mr. Gay sign a refusal form after the risks and implications were explained to him.

20. The following day, I was informed by CNA Shelby Bright that Mr. Gay had been transported by life flight. I spoke with DON Roberson about this, and she stated that he had presented with symptoms that warranted transfer. She did not provide further detail.

21. Please note that neither Nurse Scott nor myself (John Hricz) had Mr. Gay as a patient on November 13, 2022. Nurse Scott was assigned to the Med Room and I was assigned to Confinement on November 13, 2022. Another nurse was working the Annex Emergency department.

I declare under penalty of perjury that the foregoing is true and correct. Executed on the date written below.

Date: 10/6/2026

Signature: [signature] RN
John Hricz

John M Hricz III
C/o Jill Hricz
3943 Heidi Rd W
Jacksonville FL 32277

Retail

U.S. POSTAGE PAID
FCM LG ENV
JACKSONVILLE, FL 32
OCT 05, 2026

UNITED STATES POSTAL SERVICE

32301

$1.98

RDC 99

S2324M504573-23

Clerk of Court
United States District Court
Northern Division of Florida
Tallahassee Division
111 N. Adams St.
Tallahassee, FL 32301